**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

JONATHON RABON, individually,        :
and EVERETTE A. PRICE, JR., as
Guardian and Conservator for         :
JONATHON RABON,
                                     :
     Plaintiffs,
                                     :
v.                                          CA 13-00567-C
                                     :
LEE RABON and PROGRESSIVE
SPECIALTY INSURANCE COMPANY, :

     Defendants.                  :

## MEMORANDUM OPINION AND ORDER

This is a declaratory judgment action arising out of a motor vehicle accident in which two brothers—Plaintiff, Jonathan Rabon, and Defendant, Lee Rabon—were traveling in a truck driven by Lee Rabon when it was hit by a train.[1]  In a separate state court action, Jonathan Rabon brought suit for his injuries against Lee Rabon and the train company.  (Doc. 1-1, ¶ 10.)  Progressive Specialty Insurance Company ("Progressive") denied liability coverage for Lee Rabon, and the state court ultimately entered a default judgment against Lee Rabon in the amount of $500,000.00.  (*Id.*, ¶¶ 13-14.)  Jonathan Rabon subsequently filed this action seeking a declaratory judgment that, pursuant to the insurance policy entered into between Progressive and Cindy Rabon, the mother of Jonathan and Lee Rabon, Progressive was obligated to defend Lee Rabon in the underlying suit and is obligated to indemnify Lee Rabon by paying Jonathan

---

[1]    This matter is before the undersigned Magistrate Judge, pursuant to 28 U.S.C. § 636(c), to conduct any and all proceedings, including trial, entry of final judgment, and all post-judgment proceedings.  (*See* doc. 9 at 1 n.1.)

Rabon the $500,000.00 default judgment entered against his brother.  (*Id.*, ¶¶ 16-19.)[2]

After completing discovery, Progressive filed a motion for summary judgment (doc. 32), which has been fully briefed by the parties (docs. 37 and 39).  The undersigned has considered the record, the parties' pleadings, and the arguments presented in the briefs, and for the reasons set forth herein, the undersigned has determined that Progressive's motion for summary judgment is **GRANTED**.[3]

<u>**RELEVANT UNDISPUTED FACTS**</u>

In November and December 2007, and the months prior, Cindy Rabon, her husband, Darroll Rabon, and her adult sons, Lee and Jonathan Rabon, all resided together at 112 Forest Avenue, in Castleberry, Alabama.  (Doc. 32-10 at 15-18; 32-11 at 3-5.)  Lee and Jonathan Rabon did not have any other residence at that time.  (Doc. 32-10 at 15-18; 32-11 at 3-5.)

On November 12, 2007, Cindy Rabon applied for an automobile insurance policy with Progressive for insurance covering her Ford F-150.  (Doc. 32-2.)  The insurance application included a "**Drivers and household residents**" section where the applicant needed to identify "all household residents 15 years of age or older, all regular operators of the [Ford F-150], and all children who live away from home who drive [the Ford F-150], even occasionally."  (Doc. 32-2 at 1 (emphasis in original).)  Ms. Rabon only identified herself and her husband in that section of the application.  (*Id.*)  She did not

---

[2]     This matter was originally filed in the Circuit Court of Conecuh County, Alabama, (doc. 1-1), but was removed to this Court by Progressive pursuant to 28 U.S.C. §§ 1332(a) and 1441, (doc. 1).

[3]     Also before the Court is the Plaintiffs' motion to strike the affidavit of Benton Oberkirch, a representative of Progressive, (doc. 36) and Progressive's response to Plaintiffs' motion to strike (doc. 40).  For the reasons discussed below, Plaintiffs' motion to strike is **MOOT**.  *See infra* note 4.

identify Lee and Jonathan Rabon, even though they were residents of her household and were over the age of 15.  (*Id.*; doc. 32-6 at 13-14.)  Later in the application, Ms. Rabon initialed a sentence confirming that "all household residents 15 years of age or older . . . [have] been disclosed in the 'Drivers and household residents' section[.]"  (Doc. 32-2 at 3.)  Finally, Ms. Rabon signed the application, which included a verification that "the statements contained [in the application] are true to the best of [her] knowledge and belief."  (*Id.* at 3-4.)

On November 13, 2007, Progressive issued an insurance policy covering the Ford F-150 from November 12, 2007, to May 12, 2007.  (Doc. 32-7 at 1.)  Cindy Rabon and her husband, Darroll Rabon, are the only individuals listed on the policy.  (*Id.*)  The policy included liability coverage, including coverage for bodily injury to others with limits of $25,000 per injured person and $50,000 per accident.  (*Id.*)  The policy further provides in pertinent part that liability coverage, "including [Progressive's] duty to defend, will not apply to any **insured person** for: . . . **bodily injury** to **you** or a **relative**."  (*Id.* at 5-6 (emphasis in original).)  An "insured person" is defined in the policy as "**you** or a **relative** with respect to an accident arising out of the ownership, maintenance, or use of an **auto** or **trailer**."  (*Id.* at 5 (emphasis in original).)  "You" is defined in the policy as "a person shown as a named insured on the **declarations page**; and . . . the spouse of a named insured if residing in the same household."  (*Id.* (emphasis in original).)  A "relative" is defined in the policy as "a person primarily residing in the same household as **you**, and related to **you** by blood, marriage, or adoption, and includes a ward, stepchild, or foster child."  (*Id.* (emphasis in original).)

On December 8, 2007, Jonathan Rabon was riding as a passenger in the Ford F-150 when his brother, Lee Rabon, drove said vehicle across railroad tracks and in front of an oncoming train.  (Doc. 32-1 at 1-2.)  The train collided into the passenger side of

the truck causing injuries to Jonathan Rabon.  (*Id.*)  Progressive denied liability coverage for the incident, (doc. 32-9), Jonathan Rabon sued Lee Rabon and the train company to recover for his injuries, (doc. 32-3), and a default judgment was entered against Lee Rabon in the amount of $500,000, (doc. 32-4).

## Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009) ("[S]ummary judgment is appropriate even if '*some* alleged factual dispute' between the parties remains, so long as there is 'no *genuine* issue of *material* fact.'").

The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *see also Allen v. Bd. of Pub. Educ.*, 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial.").  Once this initial demonstration is made, the "responsibility then devolves upon the non-movant[s] to show the existence of a genuine issue . . . [of] material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *see also Allen*, 495 F.3d at 1314 ("'When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own

4

affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial.'"); *see Comer v. City of Palm Bay*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, '"depositions, answers to interrogatories, and admissions on file."'").

> Forbidding reliance upon pleadings precludes a party from "choos[ing] to wait until trial to develop claims or defenses relevant to the summary judgment motion." This effectuates the purpose of summary judgment which "'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Thus, "mere general allegations which do not reveal detailed and precise facts" will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists.

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir. 1995) (internal citations omitted), *cert. denied sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S. Ct. 74, 133 L. Ed. 2d 33 (1995); *see also LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party.").  In other words, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *see Comer,* 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial.").

In considering whether Progressive is entitled to summary judgment in this case, the Court has viewed the facts in the light most favorable to the Plaintiffs.  *Comer,* 265

F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to the material facts." A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

*Garczynski,* 573 F.3d at 1165 (internal citations omitted).

## DISCUSSION

Progressive argues that summary judgment should be granted in its favor for the following reasons: (1) the insurance policy covering the Ford F-150 was void because Cindy Rabon made material misrepresentations regarding the members of her household when she submitted her insurance application; and (2) liability coverage for injuries to relatives living in Cindy Rabon's household was specifically excluded by Progressive's insurance policy.   (Doc. 32 at 7-16.)   Because the undersigned has concluded that summary judgment should be granted in Progressive's favor based on the terms of the policy, which specifically excluded liability coverage associated with the injuries to Jonathan Rabon, the undersigned need not address Progressive's argument that the policy was void due to Cindy Rabon's misrepresentations.[4]

> In Alabama, "[g]eneral rules of contract law govern an insurance contract." *Safeway Ins. Co. of Ala., Inc. v. Herrera,* 912 So. 2d 1140, 1143 (Ala. 2005). "'In the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to

---

[4]    In support of Progressive's argument that it would not have issued the policy as written but for Cindy Rabon's misrepresentations, Progressive filed the affidavit of Benton Oberkirch, the claims representative who handled the insurance claim at issue in this case. (Doc. 32-12.) The Plaintiffs moved to strike Mr. Oberkirch's affidavit arguing that he is not qualified to testify regarding underwriting matters. (Doc. 36.) Because summary judgment is due to be granted on other grounds, the Plaintiffs' motion to strike is **MOOT**.

impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts have no right to add anything to their contracts or to take anything from them." *Upton v. Miss. Valley Title Ins. Co.,* 469 So. 2d 548, 554 (Ala. 1985) (quoting *Life & Cas. Ins. Co. v. Whitehurst,* 226 Ala. 687, 148 So. 164 (1933)).

However, Alabama courts have held that an insurance policy "shall be construed liberally in favor of the insured and strictly against the insurer. Exclusions are to be interpreted as narrowly as possible, so as to provide maximum coverage for the insured, and are to be construed most strongly against the insurance company, which drafted and issued the policy." *Allstate Ins. Co. v. Skelton,* 675 So. 2d 377, 379–380 (Ala. 1996) (internal citations omitted). "To the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company." *Safeway Ins. Co.,* 912 So. 2d at 1143. Nevertheless, "'[i]nsurance companies are entitled to have their policy contracts enforced as written, rather than risking their terms either to judicial interpretation or the use of straining language, and the fact that different parties contend for different constructions does not mean that the disputed language is ambiguous.'" *Woodall v. Alfa Mut. Ins. Co.,* 658 So. 2d 369 (Ala. 1995) (quoting *Gregory v. W. World Ins. Co.,* 481 So. 2d 878, 881 (Ala. 1985) (citations omitted)).

*QBE Ins. Corp. v. Whispering Pines Cemetary, LLC*, Civil Action No. 12-0054-KD-C, 2013 WL 673492, at *4 (S.D. Ala. Feb. 25, 2013).

As stated above, the insurance policy covering the Ford F-150 excluded liability coverage for bodily injuries sustained by "a person primarily residing in the same household as [Cindy Rabon], and related to [Cindy Rabon] by blood, marriage, or adoption, . . . includ[ing] a ward, stepchild, or foster child." (Doc. 32-7 at 5.) Based on the testimony of Jonathan and Cindy Rabon, it is clear that Jonathan Rabon is Cindy Rabon's son and that he was primarily residing in Cindy Rabon's household at the time at issue. (Doc. 32-10 at 15-18; 32-11 at 3-5; *see* doc. 32 at 2-6.) The Plaintiffs do not dispute those facts. (*See* doc. 37 at 2.) Furthermore, the Plaintiffs do not contend that the household exclusion is ambiguous or otherwise dispute that, based on the terms of the policy and the household exclusion provision, coverage did not apply for injuries to Jonathan Rabon. (*See* doc. 37.) Based on a plain reading of the insurance policy and the

exclusions contained therein, the undersigned finds that, because Jonathan Rabon is a relative who was residing in the same household as the insured, the insurance policy did not cover the injuries he sustained during the December 8, 2007 motor vehicle accident.

The Plaintiffs argue that the household exclusion is invalid because vehicles in Alabama are required to be covered by automobile liability insurance, pursuant to sections 32-7A-4 and 32-7A-6 of the Mandatory Liability Insurance Act ("MLIA") and section 32-7-6(c) of the Motor Vehicle Safety-Responsibility Act ("MVSRA").  (*Id.* at 7-8.) Section 32-7A-4 provides in pertinent part as follows:

> **§ 32-7A-4.  Liability insurance required.**
>
> (a) No person shall operate, register, or maintain registration of, and no owner shall permit another person to operate, register, or maintain registration of, a motor vehicle designed to be used on a public highway unless the motor vehicle is covered by a liability insurance policy, a commercial automobile liability insurance policy, motor vehicle liability bond, or deposit of cash.
>
> > (b)(1) The liability insurance policy or commercial automobile liability insurance policy shall be issued in amounts no less than the minimum amounts set for bodily injury or death and for destruction of property under Section 32-7-6(c).[5]
> >
> > (2) The motor vehicle liability bond shall be in the amount of not less than the minimum amounts of liability coverage for bodily injury or death and for destruction of property under subsection (c) of Section 32-7-6. The bond shall be conditioned on the payment of the amount of any judgment rendered against the principal in the bond or any person responsible for the operation of the principal's motor vehicle with his or her express or implied consent, arising from injury, death, or damage sustained through the use, operation, maintenance, or control of the motor vehicle within the State of Alabama.

---

[5]     Section 32-7-6(c) sets minimum limits of $25,000 in coverage for bodily injury to one person in any one accident; minimum limits of $50,000 in coverage for bodily injury to two or more persons in any one accident; and minimum limits of $25,000 in coverage for destruction of property in any one accident.  Ala. Code § 32-7-6(c).

(3) The deposit of cash with the State Treasurer shall be in the amount of not less than the minimum amounts set for bodily injury or death and for destruction of property under subsection (c) of Section 32-7-6.

(c) Only an insurer authorized to do business in this state shall issue a policy pursuant to this section for any vehicle subject to registration under Chapter 12 of Title 40. Nothing herein shall deprive an insurer of any policy defense available at common law.

(d) Notwithstanding the provisions in subsection (c), any insurance policies issued by non-admitted insurance companies procured through Alabama licensed surplus lines insurance brokers, pursuant to the provisions of Section 27-10-20 for the amounts prescribed under subsection (c) of Section 32-7-6, shall be deemed to be in compliance with this chapter provided the brokers are licensed with the Department of Insurance and the brokers transfer all required insurance information in the manner and frequency as prescribed by the department.

Ala. Code § 32-7A-4.   Section 32-7A-6 requires "every operator of a motor vehicle subject to the provisions of Section 32-7A-4 [to] carry within the vehicle evidence of insurance."   Ala. Code § 32-7A-6(a).   Section 32-7A-6 also requires that insurers issue insurance cards for every motor vehicle insured, § 32-7A-6(b), and that the insurance policy associated with said card must comport with the requirements of section 32-7A-4, § 32-7A-6(e).

The Plaintiffs do not explain how the household exclusion violates the aforementioned statutory provisions, (*see* doc. 37 at 7-8), and the undersigned finds nothing in those statutory provisions that invalidates the household exclusion or otherwise renders it unenforceable.   Although the MLIA requires that motor vehicles in Alabama be covered by liability insurance and that the coverage not be limited to an amount less than $25,000 for bodily injury to one person in any one accident, the MLIA does not specifically prohibit exclusions in an automobile liability insurance policy.   *See* § 32-7A-4.   In *Alfa Specialty Ins. Co. v. Jennings*, the Alabama Court of Civil Appeals addressed the issue of whether the MLIA, and its mandatory coverage provisions,

rendered an exclusion in an insurance policy unenforceable.  906 So. 2d 195, 200-03 (Ala. Civ. App. 2005) (concluding that, even though liability coverage is mandatory pursuant to the MLIA, coverage did not apply when the motor vehicle accident occurred in connection with a criminal act because coverage for that type of accident was excluded by the terms of the insurance policy at issue).[6]  After reviewing the MLIA, the court concluded that the Alabama Legislature contemplated that there would be some circumstances when automobile liability insurance policies would not provide coverage.  *Id.* at 200.  The court continued:

> The fact that the legislature contemplated that there would be "circumstances" as to which motor-vehicle liability insurance policies under the MLIA would not provide coverage is not surprising. The MLIA was enacted by the legislature against the backdrop of a substantial body of existing law governing automobile liability insurance policies issued in this state, including caselaw, statutes, and regulations. Further, § 32–7A–22 provides that the MLIA is to be construed *in pari materia* with other

---

[6]        Notably, before examining the MLIA the Alabama Court stated that

to the extent this or any case requires us to look beyond the provisions of a statute directly at issue in order to ascertain whether a contractual provision is in violation of public policy, our Supreme Court has repeatedly declared that "[t]he principle that contracts in contravention of public policy are not enforceable should be applied with caution and only in cases plainly within the reason on which the doctrine rests." *Lowery v. Zorn,* 243 Ala. 285, 288, 9 So. 2d 872, 874 (1942); *see also, e.g., Livingston v. Tapscott,* 585 So. 2d 839 (Ala. 1991); *Ex parte Rice,* 258 Ala. 132, 61 So. 2d 7 (1952). As our Supreme Court explained in *Milton Construction Co. v. State Highway Department,* 568 So. 2d 784 (Ala. 1990),

> "'The courts are averse to holding contracts unenforceable on the ground of public policy unless their illegality is clear and certain. Since the right of private contract is no small part of the liberty of the citizen, the usual and most important function of courts of justice is to maintain and enforce contracts rather than to enable parties thereto to escape from their obligations on the pretext of public policy, unless it clearly appears that they contravene public right or the public welfare. . . .['"]

*Alfa Specialty,* 906 So. 2d at 199 (quoting *Milton,* 568 So. 2d at 788, *overruled in part on other grounds by Ex parte Alabama Dep't of Transp.,* 978 So. 2d 17, 23 (Ala. 2007), quoting in turn 17 AM. JUR. 2D *Contracts* § 178 (1964)) (emphasis omitted).

laws.[7] Among the laws in place when the MLIA was enacted was § 27–14–8, Ala.Code 1975, pursuant to which provisions of insurance policies, including policies of the nature at issue in the present case, must be approved by the Commissioner of Insurance. **It is in this context that we recognize that the MLIA was enacted so as to require otherwise financially irresponsible drivers to maintain automobile liability insurance of the nature theretofore normally and routinely maintained by responsible drivers in this state. To conclude otherwise would require us to construe the MLIA as having been intended to abrogate exclusions, terms, conditions, and other insurance-policy provisions that theretofore had met with approval under Alabama law, including approval by the Commissioner of Insurance, and that were contained in liability insurance policies in force throughout Alabama at the time of the enactment of the MLIA.**

*Id.* at 200-01 (emphasis added).

The undersigned follows this interpretation of the MLIA by the Alabama Court of Civil Appeals[8] and concludes that the MLIA did not abrogate insurance policy exclusions, such as the household exclusion in this case, which have been recognized as valid and enforceable under Alabama law,[9] *Hutcheson v. Ala. Farm Bureau Mut. Cas. Ins. Co.*, 435 So. 2d 734, 736 (Ala. 1983) ("[T]his Court finds very persuasive a string of cases decided by the Supreme Court which have consistently upheld the validity of

---

[7]       This statutory provision regarding construction of the MLIA has been moved to § 32-7A-25 following a recent amendment.  That section provides in full as follows: "This chapter is supplemental to other laws relative to motor vehicles and a liability insurance policy, commercial automobile liability insurance policy, liability insurance bond, or deposit of cash, and insofar as possible shall be construed in pari materia with such laws."  *Id.*

[8]       "'It is well settled that federal courts are bound by the interpretation of a state statute by state courts.'"  *Ins. Co. of N. Am. v. Lexow*, 937 F.2d 569, 571 (11th Cir. 1991) (quoting *Silverstein v. Gwinnett Hosp. Auth.*, 861 F.2d 1560, 1569 (11th Cir. 1988)).  "In applying state law, a federal court must 'adhere to decisions of the state's intermediate appellate courts absent some persuasive indication that the state's highest court would decide the issue otherwise.'"  *Id.* (quoting *Silverberg v. Paine, Webber, Jackson & Curtis, Inc.*, 710 F.2d 678, 690 (11th Cir. 1983)).

[9]       More specifically, the undersigned finds that, contrary to the Plaintiffs' assertions, the statutory provisions referenced by the Plaintiffs—§ 32-7A-4, which mandates liability insurance, § 32-7A-6 which requires proof of insurance, and §§ 32-7A-4 and 32-7-6(c), which require minimum policy limits of $25,000 for bodily injury—do not conflict with the household exclusion in this case or otherwise render it unenforceable.

household and similar exclusions contained in policies of liability insurance, so long as they do not conflict with statutory law or public policy. . . . The Supreme Court of Alabama has consistently upheld the validity of the [household exclusion before the Court], confirming as judicial policy of the state that insurance companies may by appropriate exclusions and exclusionary definitions protect themselves through a valid contract." (citations omitted)); *id.* at 738 ("In conclusion, this Court finds the [household] exclusion considered herein to be a valid exercise of [the insurance company's] contractual rights, which is contrary to neither statutory law nor public policy.  Therefore, the Plaintiff's request that the [insurance company] be required to defend, indemnify or pay any judgment rendered against the [driver] is without merit."); *see Am. Fire & Cas. Co. v. State Farm Mut. Auto. Ins. Co.*, 273 So. 2d 186, 188 (Ala. 1973) (concluding that, in light of household exclusion provision in automobile insurance policy, the policy did not cover injuries to relatives residing in the same household as the insured); *Blow v. State Farm Mut. Auto. Ins. Co.*, 228 So. 2d 4, 8-9 (Ala. 1969) (same); *Hogg v. State Farm Mut. Auto. Ins. Co.*, 162 So. 2d 462, 463 (Ala. 1964) (same); *Holloway v. State Farm Mut. Auto Ins. Co.*, 151 So. 2d 774, 774-75, 778 (Ala. 1963) (same).

In *Hutcheson*, the Alabama Supreme Court confirmed that a household exclusion in an automobile liability insurance policy did not contravene the MVSRA or the public policy of Alabama.  *Hutcheson*, 435 So. 2d at 737-38.  As the supreme court explained, the purpose of household exclusions is "to exempt from coverage those persons to whom the insured, on account of close family ties, would be apt to be partial in case of injury" and that purpose "has long been approved by the courts of Alabama."  *Id.* at 737.  The supreme court further stated that, "to accept the Plaintiff's contention [that the MVSRA nullified the household exclusion] would do violence to long established

principles of law." *Id.*[10]

Based on the foregoing, the undersigned finds that the household exclusion in Progressive's insurance policy does not violate Alabama statutory provisions or Alabama public policy.  As such, it is valid and enforceable, and Progressive was not obligated to defend or indemnify Lee Rabon in connection with the injuries to Jonathan Rabon.  Thus, summary judgment in this declaratory judgment action should be granted in Progressive's favor.

<u>CONCLUSION</u>

For the reasons set forth above, Progressive's motion for summary judgment (doc. 32) is **GRANTED**.  The Plaintiffs are to have and take nothing from Progressive, and this declaratory judgment action (doc. 1-1) is **DISMISSED WITH PREJUDICE**.

**DONE and ORDERED** this the 14th day of April 2015.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

---

[10]    The Plaintiffs argue that *Hutcheson* is no longer applicable because, since the time of that decision, the Alabama Legislature has enacted the MLIA, which mandates liability insurance.  (*See* doc. 37 at 8.)  However, based on the decision of the Alabama Court of Civil Appeals in *Alfa Specialty*, discussed above, the undersigned finds the Plaintiffs' argument unconvincing.